**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alek FIDANIAN, Defendant-Appellant.**

No. 71–2952.

United States Court of Appeals,
Fifth Circuit.

July 26, 1972.

Rehearing and Rehearing En Banc
Denied Sept. 12, 1972.

Certiorari Denied Dec. 4, 1972.
See 93 S.Ct. 540.

Timothy J. Armstrong, Miami, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Bessie Margolin, Carin Ann Clauss, Jay S. Berke, Richard F. Schubert, Sol. of Labor, Sylvia S. Ellison, Atty., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Sol., for plaintiff-appellee.

Before PHILLIPS,* THORNBERRY and RONEY, Circuit Judges.

RONEY, Circuit Judge:

■ This case raises the question of whether the power of the district court to imprison a person found to be in criminal contempt of a court order directing compliance with the Fair Labor Standards Act is in any way limited by the provisions of that Act. The Fair Labor Standards Act provides criminal penalties for violation of the Act, but prevents imprisonment on the first offense. The United States Code provides that a district court may punish the disobedience of its orders by imprisonment. The question is whether that provision of the Fair Labor Standards Act also prohibits imprisonment on the first conviction for contempt of a court order requiring compliance with the Act, there being no prior criminal conviction under the Act. We hold that the power of the district court is not so limited and affirm the sentence of six months imprisonment for the willful violation of the court's order.

The district court found that Alek Fidanian had willfully violated a consent decree entered against him in a Fair Labor Standards Act proceeding. The court adjudged Fidanian to be in criminal contempt and sentenced him to six months in prison. The consent decree emanated from an action instituted by the Secretary of Labor under Section 17 of the Fair Labor Standards Act against VIP Answering Service, Inc., and Alek Fidanian, its sole stockholder. In April, 1970, by consent decree the district court enjoined defendants from violating the minimum wage, overtime, and recordkeeping provisions of the Act and ordered payment to various employees of back wages totalling $3,022.58.

A year later, defendant still had not complied with the district court's order. The United States petitioned for both civil and criminal contempt judgments against Fidanian and VIP Answering Service. The court found the individual and corporate defendants both guilty of civil and criminal contempt. The only appeal taken is from the criminal contempt judgment entered against Fidanian personally.

Although we think the most important question on this appeal is that concerning the prison term, Fidanian raises additional questions of jurisdiction and failure of proof.

### I.  *Imprisonment*

The prison sentence was imposed on Fidanian under authority of 18 U.S.C. § 401 (1970):

"A court of the United States shall have power to punish by fine or im-

* Hon. Orie L. Phillips, of the Tenth Circuit, sitting by designation.

prisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

Fidanian's position is that Section 401 cannot, in a Fair Labor Standards Act case, be read *in vacuo*. He contends that it must be read *in pari materia* with Section 16(a) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(a) (1970), which provides:

"Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection."

Had Fidanian been prosecuted under Section 16(a), the district court would have been prohibited from imposing a prison sentence because he had never been convicted of a prior violation of the Act.

Appellant argues that Congress would not have so carefully limited the court's power to punish FLSA violations in prosecutions brought under that Act, and yet left it open for the court to impose a prison sentence for precisely the same conduct under the contempt power. The actions of appellant, he argues, amount to nothing more than a violation of the Act, for which he could not at this time be imprisoned under Section 16(a).

The government relies on Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959). Defendant in that case was summoned to testify before a grand jury investigating violations of the Motor Carrier Act. When he refused to testify after a grant of immunity, he was held in contempt and sentenced to 15 months in prison. Brown argued in the Supreme Court that the sentence he was given was greater than that provided for substantive violations of the Motor Carrier Act itself. The Court rejected this argument, pointing out that a more apt comparison would be to the five year prison term allowable for the offense of obstructing justice.

While the case before us is, of course, factually different from *Brown*, we think that the rationale of that decision is applicable. *Brown* makes clear the distinction which must be drawn between the court's power to punish violations of criminal statutes and its power to vindicate its own authority through the use of the contempt judgment. It is settled law that the power to punish for contempt is an inherent power of the federal courts and that it includes the power to punish violations of their own orders. Green v. United States, 356 U. S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); N.L.R.B. v. Deena Artware, Inc., 261 F.2d 503 (6th Cir. 1958), rev'd on other grounds, 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960); In re Manufacturers Trading Corp., 194 F.2d 948 (6th Cir. 1952). The inherent power to punish contempt has been upheld even though the order upon which the criminal contempt rests is set aside on appeal. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The contempt power can be, however, limited by Congress and Section 401 has been found to so limit it. United States v. Temple, 349 F.2d 116 (4th Cir. 1965), cert. denied, 386 U.S. 961, 87 S.Ct. 1024, 18 L. Ed.2d 110 (1967); Farese v. United States, 209 F.2d 312 (1st Cir. 1954). But a limitation on a federal court's inherent power to punish violations of its own orders must be explicit. Such an explicit limitation cannot be found in Section 216(a), nor can one be implied from it. Merely because an act may constitute both an indictable offense *and* a contempt does not afford a basis upon which to find an implicit limitation on the contempt power. *See* Jurney v.

MacCracken, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802 (1935); United States ex rel. Brown v. Lederer, 140 F.2d 136 (7th Cir.), cert. denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568 (1944). The contempt sentence given here was within the limits set by the legislature. There is no question that defendant's conduct amounted to knowing disobedience of the court's order, and it is this affront to the integrity of the court, not the substantive criminal violation, that is being punished.[1]

Moreover, unlike a statutory criminal violation where liability cannot be avoided by subsequent remedial or restitutory action, a party can easily avoid a contempt violation by simply obeying the court's order. When the order is entered he is fully advised of what must be done to avoid punishment. He may do this even though the facts and circumstances giving rise to the order might also have supported criminal liability. This procedure would seem to afford the kind of protection that Congress may have intended against imprisonment for initial violations that might result from the failure to comply with a complicated business regulation. A person could be unaware of the severe consequences that could accrue for non-compliance with the Act, until he had met the full impact of the Act, face to face. On the other hand, no one should be unaware of the ancient inherent power of the court to enforce its orders by contempt proceedings, including imprisonment.

Defendant has argued that to affirm his conviction would be giving our approval to the government's attempt to circumvent the restrictions which Congress placed in Section 16(a) of the Act. It is more correct to say that a reversal would constitute approval of the defendant's attempt to circumvent the usual consequences of a willful disobedience of the orders of the court. As the Supreme Court has observed:

". . . if, upon the examination of the record, it should appear that the defendants were in fact and in law guilty of [criminal contempt], there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience. For while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees, would be only advisory." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450, 31 S. Ct. 492, 501, 55 L.Ed. 797 (1910). *See also* Yates v. United States, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).

## II. *Jurisdiction of the District Court*

■ Fidanian contends that the district court had no jurisdiction to enter the criminal contempt judgment because the government did not prove that at the time the consent decree was entered Fidanian actually had employees who were covered by the Fair Labor Standards Act. He reasons that the district court lacked jurisdiction to enter the consent decree and therefore could not punish for the contempt of its order.

Appellant confuses jurisdiction, i. e., the power to decide the controversy, with the merits of the underlying dis-

---

1. We think the district court took too narrow a view of its power in the two cases cited by appellant. In United States v. B. & W. Sportswear, 53 F.Supp. 785 (E.D. N.Y.1943) and in United States v. P. & W. Coat Co., 52 F.Supp. 792 (E.D. N.Y.1943), the defendants were found guilty of criminal contempt of court orders requiring compliance with the Fair Labor Standards Act. The court held in each case, however, that because of the provisions of Section 16(a) of the Act it would circumvent the intention of Congress to impose a jail sentence, there being no prior conviction of a violation of the Act. The punishment for criminal contempt was therefore limited to a fine by the district court.

pute, i. e., whether the decision in the consent decree was correct. There is no doubt that the court had the power to enter a consent decree that was binding on defendant Fidanian.

Jurisdiction, in the context of the issue presented here, means the

> "power to entertain the suit, consider the merits and render a binding decision thereon; and by merits we mean the various elements which enter into or qualify the plaintiff's right to the relief sought. There may be jurisdiction and yet an absence of merits [citations omitted] as where the plaintiff seeks preventive relief against a threatened violation of law of which he has no right to complain . . . ." General Investment Co. v. New York Central R.R., Co., 271 U. S. 228, 230, 46 S.Ct. 496, 497, 70 L.Ed. 920 (1926).

In Swift & Co. v. United States, 276 U. S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928), the defendant argued that a previously entered consent decree was void because it was not limited to acts in interstate commerce. The Court rejected this contention, stating:

> "Again, the argument fails to distinguish an error in decision from the want of power to decide . . . . If the court . . . enjoined some [acts] that were wholly intrastate and in no way related to the conspiracy to obstruct interstate commerce, it erred; and, had the defendants not waived such error by their consent, they might have had it corrected on appeal. But the error, if any, does not go to the jurisdiction of the court. The power to enjoin includes the power to enjoin too much." 276 U.S. at 330–331, 48 S.Ct. at 316.

Once the consent decree was entered, the district court had the power ("jurisdiction") to punish disobedience, even if it erred in issuing the injunction originally. Cf. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United States v. United Mine Workers of America, supra; Mc-

Leod v. Majors, 102 F.2d 128 (5th Cir. 1939); Locke v. United States, 75 F.2d 157 (5th Cir.), cert. denied, 295 U.S. 733, 55 S.Ct. 644, 79 L.Ed. 1681 (1935).

### III. Sufficiency of the Evidence

Appellant attacks the sufficiency of the evidence to sustain his conviction. While he does not (as he could not) dispute that the terms of the consent decree were violated, he urges that the government did not prove beyond a reasonable doubt that the violations were willful.

It is not our function on this review to retry the defendant or to substitute our judgment for that of the trial judge. Campbell v. United States, 291 F.2d 401 (5th Cir. 1961), cert. denied, 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 86 (1962). We leave to the trial court the prerogative of selecting between the conflicting inferences which may be drawn from the evidence, United States v. Pitts, 428 F.2d 534 (5th Cir.), cert. denied, 400 U. S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970), and we must view the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We find that in this case the trial court was justified in concluding beyond a reasonable doubt that defendant was guilty of willfully failing to comply with the court decree.

Three of Fidanian's employees, including his bookkeeper, testified that he had directed the falsification of employee time and wage records. This testimony was more than ample to support the district court's findings on the point. By way of rebuttal Fidanian argues that this testimony was not credible. That determination, however, was for the trier of fact. Lujan v. United States, 431 F.2d 871 (5th Cir. 1970), cert. denied, 400 U.S. 997, 91 S.Ct. 474, 27 L. Ed.2d 447 (1971).

There was also ample evidence to show a willful failure to comply with the restitution portion of the consent decree. Fidanian's defense was that he could not

pay his employees their back wages because he lacked funds. The evidence showed, however, that subsequent to entry of the consent decree Fidanian acquired two more answering services. On one of them he made purchase payments in excess of $5,000.00. He also borrowed over $8,000.00 from a business associate. None of this money was used to comply with the court's order.

 To sustain a finding of willfulness the government need not prove evil motive on the part of the defendant. It is sufficient if the defendant's actions were deliberate, voluntary, or intentional, as distinguished from accidental, inadvertent, or negligent. Nabob Oil Co. v. United States, 190 F.2d 478 (10th Cir.), cert. denied, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 658 (1951); *cf.* United States v. Custer Channel Wing Corp., 376 F.2d 675 (4th Cir.), cert. denied, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967).

Appellant would have us reverse because the district court failed to state in explicit terms whether it applied the "preponderance of the evidence" test or the "beyond a reasonable doubt" test in determining Fidanian's guilt. This case is not like Clark v. Boynton, 362 F.2d 992 (5th Cir. 1966) and Cliett v. Hammonds, 305 F.2d 565 (5th Cir. 1962), which are relied upon by appellant. In both of those cases reversal was required because the district court failed to make it clear at all stages of the proceedings that criminal, as well as civil, contempt charges were being tried. Nothing in the case before us gives any reason to conclude that the trial judge and the parties did not fully understand from the outset that Fidanian was being tried for criminal contempt, and that he must be found guilty beyond a reasonable doubt.

Affirmed.

ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

PER CURIAM.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.