**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DEENA ARTWARE, Incorporated, Respondent.**

No. 11156.

United States Court of Appeals
Sixth Circuit.
Dec. 13, 1958.

Irving M. Herman, Atty., N.L.R.B., Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Louis Schwartz, Asst. Gen. Counsel, Walter N. Moldawer, Atty., N.L.R.B., Washington, D. C., of counsel), for petitioner.

James G. Wheeler, of Wheeler & Marshall, Paducah, Ky., for respondent.

Before MARTIN and MILLER, Circuit Judges, and JONES, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

■ The National Labor Relations Board has petitioned this Court to adjudge in civil contempt of this Court the respondent, Deena Artware, Incorporated, hereinafter referred to as Artware, its president and agent George H. Weiner, and four other corporations who are affiliated with Artware as hereinafter set out, for resisting, disobeying and violating, and refusing to comply with the decree of this Court entered herein on July 30, 1952, and the supplemental decree entered herein on December 16, 1955.

This is the fifth time this case has been before us. Our previous opinions, to which reference is made, give in detail the factual background and history of the litigation. For our present purposes, we will restate only such basic facts as are necessary to present the issue now under consideration.

On July 30, 1952, this Court entered its decree in this case enforcing an order of the Board issued on October 25, 1949, against respondent Artware, directing *inter alia*, that Artware, its officers, agents, successors and assigns, make whole certain named employees for any losses in pay they may have suffered by reason of respondent's discrimination against them in refusing to reinstate them following the termination of a strike, in violation of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. N. L. R. B. v. Deena Artware, Inc., 6 Cir., 198 F.2d 645, certiorari denied 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342. The case was remanded to the Board for the purpose of hearings and findings as to the amounts due the individual employees.

On November 10, 1953, this Court denied motions of the Board to enjoin Artware and its president Weiner from assigning to Deena Products Co., its parent corporation, in part payment of an alleged indebtedness owing by Artware to Deena Products Co., the unpaid portion of a substantial judgment which Artware had recovered against United Brick & Clay Workers and the American Federation of Labor as damages resulting from an illegal secondary boycott. N. L. R. B. v. Deena Artware, Inc., 6 Cir., 207 F.2d 798; United Brick & Clay Workers of America v. Deena Artware, Inc., 6 Cir., 198 F.2d 637, certiorari denied 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694. The principal ground for this ruling was that the amounts due the employees whose claims the Board was attempting to protect against dissipation of Artware's assets were unliquidated. It was also pointed out in that opinion that since the claims were unliquidated, this Court would not treat the assignment by Artware of its assets as being in contempt of this Court's previous order to make whole the employees it had illegally discharged.

Following the remand of the case to the Board, the Board held hearings and issued its supplemental decision and order directing payments in specific amounts to designated individual employees, which totaled approximately $300,000.00. On December 16, 1955, this Court entered its supplemental decree enforcing the supplemental decision and order of the Board, the effect of which was to liquidate the amounts which Artware was ordered to pay to its individual employees. N. L. R. B. v. Deena Artware, Inc., 6 Cir., 228 F.2d 871.

Artware did not make the payments so ordered. It contended then, as it does now, that it was forced by economic conditions and the labor dispute involved in this litigation to discontinue the operation of its plant in Paducah, Kentucky, during the year 1953; that it was financially unable to make the payments; that there were no assets available for that purpose; and that whatever assets were previously available for creditors had through bona fide business transactions been used in the payment, or to secure the payment, of its legal obligations. The Board contended then, as it does now, that Artware and the several affiliated corporations were integral parts of a single enterprise, substantially owned and controlled by Weiner; that the operations of Artware were conducted in a manner which prevented it from having assets, and thereby prevented compliance with the back pay provisions of the decrees; that Artware's assets were siphoned off or transferred to affiliated companies, in consequence of which Artware was left with no assets with which to comply with the decree; that the affiliated corporations were *alter egos* and/or successors to Artware within the meaning of the decrees; and that Artware and the affiliated corporations were subject to the back pay provisions of the decree and responsible for the failure to comply therewith, and liable for payment of said back pay. The Board filed a motion that Artware and the several affiliated corporations be directed to produce and permit the Board to inspect, copy and photograph numerous books, records, bank statements and various types of papers and documents which would show the financial condition of Artware and the respective obligations and credits rendered between Artware and the affiliated corporations. It also asked that certain present or former officers of Artware and the affiliated corporations be directed to give depositions with respect to the financial ability of Artware to comply with the provisions of the supplemental decree and the dealings and relationship of Artware with said affiliated corporations. These motions were not in support of any contempt proceeding. For that reason this Court, with one judge dissenting, ruled on January 17, 1958, that the motions were premature and that such discovery proceedings would not be authorized or ordered in the absence of contempt proceedings, the validity of

which, as a matter of law, should be first passed upon by this Court. N. L. R. B. v. Deena Artware, Inc., 6 Cir., 251 F.2d 183.

On August 20, 1958, the Board filed the present petition for adjudication in civil contempt. It has also refiled its motion, in substantially the same form as previously filed, for discovery and inspection of documents of Artware and the four affiliated corporations and for an order directing that depositions be taken of present or former officers of the five affiliated corporations.

The petition for adjudication in civil contempt names the five affiliated corporations as being Deena Products Company, Inc., hereinafter called Products, an Illinois corporation maintaining plants and its principal office in Chicago, Illinois, which is the parent corporation, and its four subsidiaries, namely, Artware, Deena of Arlington, Inc., hereinafter called Arlington, Sippi Products Company, Inc., hereinafter called Sippi, and Industrial Realty Company, Inc., hereinafter called Industrial. It alleges that at all times material herein, Weiner has owned all the shares of stock of Products except for the minimum shares required by directors to qualify for office; that Products has owned all the shares of stock of the four subsidiaries except for the minimum shares required by directors to qualify for office; that the officers and directors of Products and of the subsidiaries have been Weiner, his wife, his son, and whoever has been employed as Weiner's personal office secretary; that Weiner has been president and treasurer of Products and each of the subsidiaries and has actively directed and controlled the financial and business operations of Products and the subsidiaries; that Products and the subsidiaries have constituted and have been operated as a single enterprise, engaged in the manufacture, sale and distribution of lamps, with each of said corporations performing a particular function, as a department or division of one enterprise in the manufacture, sale and distribution of the common product;

and that Products and Weiner, through and together with Arlington, Sippi and Industrial, have caused the affairs and business of Artware to be conducted in a manner which divested Artware of its assets during the litigation herein for the purposes of preventing and frustrating compliance with the Court's decrees.

Allegations of detailed facts are made in support of these general contentions. Of major importance are the following. Special attention is directed to the specific dates. (1) About March, 1949, following the hearings before the Board, Products and Weiner in the exercise of their control over the price which Products paid Artware for the urns which Artware manufactured and sold exclusively to Products, reduced such price despite added operations and increased costs, and required Artware to continue to sell and deliver its entire output to Products and/or Arlington at prices which did not constitute adequate or proper consideration or value for such products or permit Artware to show a fair return. In consequence thereof Artware showed losses from its operations, although Products made substantial profits on the sale of the completed product. (2) About October 31, 1949, a few days after the issuance of the Board's decision and order of October 25, 1949, Products and Weiner caused Artware to execute mortgages on all of its real and personal property, allegedly to secure the payment of a promissory note, executed at the same time, undertaking to pay Products $75,459.65 within five years from the date thereof, with 6 per cent interest payable semi-annually; that about September 19, 1952, Products and Weiner caused Artware to execute further mortgages on said real and personal property, allegedly to secure payment of a three-year promissory note for $5,797.74 with interest at 6 per cent payable semi-annually; that about December 16, 1952, Products and Weiner caused Artware to make to Products a partial assignment of the proceeds of a judgment in the amount of $29,985.85

which Artware had recovered against the United Brick & Clay Workers of America and the American Federation of Labor, allegedly as security in addition to the mortgages referred to above, and that by reason of said assignment Products received on or about January 22, 1954, the sum of $19,320.97. (3) That about April 24, 1953, Products and Weiner caused Artware to cease all operations and thereafter until about November 24, 1954, Sippi and Products, without payment, used Artware's plant, facilities and properties at Paducah. (4) About November 24, 1954, Products and Weiner caused Artware to convey to Products title to all its property, including its real estate, factory, equipment, machinery, inventory, money and other assets, allegedly in payment of Artware's purported indebtedness in the total amount of $105,000.00, secured by mortgages hereinabove referred to, leaving as Artware's sole unsatisfied obligation the back pay due under the decrees herein, and that Artware has engaged in no business activities since the transfer of its property; that about May 4, 1955, Products and Weiner conveyed the plant with its equipment, machinery and other contents, formerly owned and operated by Artware, and its other real estate, to a newly organized corporation, namely, the subsidiary, Industrial, which subsidiary continues to hold the legal title to such properties. The petition also alleges that Artware's alleged indebtedness to Products, to secure which the mortgages and assignments were executed, was not a true and valid indebtedness, nor was it due or owing by Artware to Products, nor were the notes, mortgages and assignments executed for adequate consideration, but were in fact executed for the purpose of evading payment of the sums due under the decrees herein, and that as a result of the conduct above described, Weiner, Products, Arlington, Sippi and Industrial so manipulated the business of Artware as to prevent Artware from accumulating any cash or other assets with which to comply with the decrees herein, the object thereof being to thwart and frustrate compliance with said decrees. The petition contends that by reason of the foregoing acts, Weiner and the five affiliated corporations and each of them are in civil contempt of this Court, prays that they be so adjudged in civil contempt and that they be ordered to purge themselves of such contempt by forthwith paying in full to each of the employees named in the supplemental decree the sum of money therein specified, and that upon failure to do so the Court issue attachments against each of them.

Artware has moved that the petition be dismissed on the ground that no claims on which the requested relief can be granted are stated therein. It has also filed an answer admitting some of the allegations as to corporate existence, stock ownership and officer personnel of the affiliated corporations, the execution of mortgages and the transfer of property by it to Products in satisfaction of its indebtedness to Products, that Artware ceased operations on or about April 24, 1953, and that no payments have been made on the back pay awards. It denied the allegations of fraud or wrongdoing on its part and that the business of Artware was conducted in a manner which was calculated or did divest Artware of its assets during this litigation for the purpose of preventing or frustrating compliance with the Court's decrees. It affirmatively alleged that the transactions complained of were bona fide business transactions, and that the notes, mortgages, assignment and conveyance were duly, regularly and properly executed, for adequate and proper consideration and for value given. Weiner and the other affiliated corporations moved that the petition be dismissed for want of jurisdiction, and in the event such motion should be overruled, adopted as their own the allegations of the answer of Artware.

We accordingly have a large field of factual controversy, including many transactions over a number of years.

Hearings on these factual issues could easily take a number of months. The practical problems of who should conduct these hearings and how the expense thereof was to be met, in view of Artware's lack of assets, were discussed in oral argument. The Board has made a number of suggestions. We have concluded that if a hearing becomes necessary, it should not be farmed out to an administrative agency, but should be conducted by the Court through a Commissioner of its own appointment. Wallace Corp. v. N. L. R. B., 4 Cir., 159 F.2d 952, 954. But before embarking on that procedure and making some provision for the payment of costs, we must consider the allegations of the petition in order to determine whether, as a matter of law, they are sufficient to serve as a basis for contempt proceedings. This is in accordance with the view heretofore expressed by us in N. L. R. B. v. Deena Artware, Inc., supra, 6 Cir., 251 F.2d 183, 185–186.

■ It is, of course, settled law that the power to punish for contempt is an inherent power of the Federal Courts and that it includes the power to punish violations of their own orders. Green v. United States, 356 U.S. 165, 170, 78 S.Ct. 632, 2 L.Ed.2d 672; In re Manufacturers Trading Corp., 6 Cir., 194 F.2d 948, 956. It is also settled law that this inherent power can be limited by Congress and has so been limited by Sec. 401, Title 18 U. S. Code. United States v. Hall, 2 Cir., 198 F.2d 726, Note at page 728; Farese v. United States, 1 Cir., 209 F.2d 312, 315, 42 A.L.R.2d 962; Cammer v. United States, 96 U.S.App.D.C. 30, 223 F.2d 322, 324, reversed on other grounds, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474. Sec. 401 provides: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

■■ In the present case the applicable provision is Subsection 3 of Sec. 401. Under that section the deliberate refusal to comply with a back pay award, when financially able to do so, is contempt of court. N. L. R. B. v. Lawley, 5 Cir., 182 F.2d 798; N. L. R. B. v. Lightner Pub. Corp., 7 Cir., 128 F.2d 237, 241. See: Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622, 626. Fraudulent devices on the part of a respondent, entered into for the purpose of evading the impact of a back pay award, will be disregarded by the court in contempt proceedings for refusal to comply with the court's order. Parker v. United States, 1 Cir., 135 F.2d 54, 58; N. L. R. B. v. Deena Artware, Inc., supra, 6 Cir., 207 F.2d 798, 802; N. L. R. B. v. Parsons' Punch Corp., 6 Cir., 249 F.2d 956.

■ On the other hand, it also appears to be settled law that inability to comply with an order requiring the payment of money resulting from insolvency or other cause not attributable to the fault of the party charged will under ordinary circumstances be a valid defense to contempt proceedings. In re Sobol, 2 Cir., 242 F. 487; Healey v. United States, 9 Cir., 186 F.2d 164, 171; United States ex rel. Emanuel v. Jaeger, 2 Cir., 117 F.2d 483, 488. It appears to be undisputed in the present case, as shown by the allegations of the Board's petition in this contempt proceeding, that at least since December 16, 1955, the date of the supplemental decree, which liquidated the amounts to be paid to designated employees, Artware has been financially unable to pay the awards, had no assets of any kind, and was in fact out of business. Disregarding for the moment what transpired before that date, it would seem that Artware's failure to reinstate certain employees and to pay the awards for back pay at any time subsequent to December 16, 1955, would not furnish a basis for contempt proceedings. N. L. R. B. v.

Caroline Mills, Inc., 5 Cir., 167 F.2d 212, 214. We think that the answer to our present problem is restricted to a consideration of what happened prior to that date.

Sec. 401(3), Title 18, U. S. Code, plainly limits the power of this court to a case of disobedience or resistance to its "order, rule, decree, or command." This necessarily means an existing order, rule, decree, or command. Acts of a respondent *prior* to the entry of the order or judgment which he is charged with disobeying, do not constitute contempt of court, regardless of the intentions of the respondent to avoid the impact of an order or judgment expected by him to be thereafter entered. Berry v. Midtown Service Corp., 2 Cir., 104 F.2d 107, 122 A.L.R. 1341, certiorari dismissed 308 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525; Ex parte Buskirk, 4 Cir., 72 F. 14, 20; In re Sixth & Wisconsin Tower, 7 Cir., 108 F.2d 538; Parker v. United States, 1 Cir., 126 F.2d 370, 380. We recognize the argument of the Board that the acts of a respondent prior to the entry of the order or decree should be considered by the Court in determining the questions of intent and wilfulness with respect to his later actions in violation of the decree. Such conduct, although bearing on the question of intent, does not by itself constitute contempt, and if the respondent after the entry of the court's decree or command does not act in "disobedience or resistance" thereto, the argument becomes inapplicable.

In considering this question we must keep in mind the difference between contempt proceedings and certain civil proceedings by which creditors can attack and upset conveyances and transfers by a debtor, which are made with the intent to delay, hinder or defraud creditors or which constitute a preference by a debtor of one creditor over another. The transactions complained of in the present case could have been attacked and possibly upset by proceedings instituted under the provisions of Sections 378.010 and 378.060, Kentucky Revised Statutes. Nathanson v. N. L. R. B., 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23; N. L. R. B. v. Deena Artware, Inc., supra, 6 Cir., 207 F.2d 798, 801. But whether the transfers and conveyances complained of in the present case constituted preferences or conveyances for the purpose of defrauding creditors is not the question presented to us. On the contrary, we have the narrow issue of whether the transactions and conveyances of Artware and its affiliates were in disobedience or resistance of an existing court order.

This brings us to what is probably the decisive question in this case, namely, the effective date for the purpose of contempt proceedings of the order or decree of this Court which it is alleged the respondents have disobeyed. The original enforcement decree was entered by this Court on July 30, 1952. That decree directed that Artware make whole certain employees for any losses in pay they may have suffered by reason of their illegal discharge. That decree did not direct Artware to pay any amount to any designated employee. At that time it was not known and had not been determined either by the Board or the Court what amount, if any, any particular employee would be entitled to. Failure or refusal to make payment promptly thereafter did not constitute contempt. It is settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done. N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 435, 61 S.Ct. 693, 85 L.Ed. 930; Traub v. United States, 98 U.S.App.D.C. 43, 232 F.2d 43, 47, and cases cited in note 7; McFarland v. United States, 7 Cir., 295 F. 648, 650; N. L. R. B. v. Bell Oil & Gas Co., 5 Cir., 98 F.2d 405, 406. Although Artware knew that it would be later ordered by the Court to make certain specific payments, it was under no order of the Court to do so until such later time. Berry v. Midtown Service Corp., supra, 2 Cir., 104 F.2d 107, cer-

tiorari dismissed 309 U.S. 629, 60 S.Ct. 297, 84 L.Ed. 525; Ex parte Buskirk, supra, 4 Cir., 72 F. 14, 20.

It was not until December 16, 1955, when the supplemental decree was entered, that the back pay awards became liquidated, with specific amounts allocated to specific employees. There are numerous factors involved in determining what amount, if any, each employee is entitled to. The conduct of the employee during the strike may have been such as to bar his right to any recovery at all. N. L. R. B. v. Mylan-Sparta Co., Inc., 6 Cir., 166 F.2d 485; N. L. R. B. v. Deena Artware, Inc., supra, 6 Cir., 198 F.2d 645, 652; N. L. R. B. v. Ohio Calcium Co., 6 Cir., 133 F.2d 721. Failure or refusal on the part of certain discharged employees to accept other suitable employment available to them can operate as a bar to any award. Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 197–200, 61 S.Ct. 845, 85 L.Ed. 1271; N. L. R. B. v. Southern Silk Mills, 6 Cir., 242 F.2d 697; N. L. R. B. v. Bishop, 6 Cir., 228 F.2d 68, 72. Elimination of the position formerly held by a discharged employee because of lack of business can likewise defeat a claim for lost wages. N. L. R. B. v. Lightner Pub. Corp., supra, 7 Cir., 128 F.2d 237, 241; N. L. R. B. v. Roure-Dupont Mfg., Inc., 2 Cir., 199 F.2d 631, 634; Corning Glass Works v. N. L. R. B., 2 Cir., 118 F.2d 625, 629–630. See: N. L. R. B. v. American Creosoting Co., 6 Cir., 139 F.2d 193, 196. Sickness of the discharged employee or inability or unwillingness to work are also factors which have to be considered. See: N. L. R. B. v. Moss Planing Mill Co., 4 Cir., 224 F.2d 702.

The fixing of the amount of the award for back pay is a function of the Board, not the Court, and at times involves difficult problems, in the solution of which the employer is entitled to be heard. N. L. R. B. v. Seven-Up Bottling Co. of Miami, Inc., 344 U.S. 344, 346, 73 S.Ct. 287, 97 L.Ed. 377. No award which it makes is enforceable until reviewed and approved by the Court. Sec. 160(e) and (f), Title 29, U. S.C.A. It is not contempt of court to refuse to obey the Board's order before it has been judicially confirmed. N. L. R. B. v. Express Publishing Co., supra, 312 U.S. 426, 433, 61 S.Ct. 693, 85 L.Ed. 930. We are of the opinion that the enforcement order of July 30, 1952, which left undecided and undisposed of the amounts of back pay which any individual employee would be entitled to receive, was not sufficiently definite and mandatory to serve as the basis for contempt proceedings, and that the order which must serve as the basis for such proceedings is the supplemental decree of December 16, 1955. Rulings to the same effect are contained in N. L. R. B. v. New York Merchandise Co., 2 Cir., 134 F.2d 949, 952; Wallace Corp. v. N. L. R. B., supra, 4 Cir., 159 F.2d 952, 954; and N. L. R. B. v. Bell Oil & Gas Co., 5 Cir., 99 F.2d 56. This is also the view heretofore expressed by this Court in N. L. R. B. v. Deena Artware, Inc., supra, 6 Cir., 207 F.2d 798, 802. As shown by the allegations of the Board's petition, the transactions relied upon as the basis for contempt proceedings occurred prior to December 16, 1955.

The Board's motion for discovery and inspection and depositions upon oral examination is denied.

The motions of the respondents to dismiss the Board's petition for adjudication in civil contempt are sustained.